```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
```

Wilmington Savings Fund Society,
FSB, *not in its individual capacity but solely as owner trustee of the Aspen Holdings Trust, a Delaware statutory trust*,

            Plaintiff,

  - against -

Yuberkys Fernandez,

            Defendant.

```
------------------------------------X
```

**MEMORANDUM & ORDER**

No. 22-cv-6474 (KAM) (ST)

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Wilmington Savings Fund Society commenced this action against Defendant Yuberkys Fernandez to foreclose on the mortgage encumbering the property located at 9 Conklin Avenue, Selden, New York 11784 in accordance with Article 13 of the New York Real Property Actions and Proceedings Law.  (ECF No. 1, Compl.)[1]  Wilmington now moves the Court to enter a default judgment against Fernandez for failing to timely answer or otherwise respond to the Complaint.  For the reasons below, the Court denies Wilmington's motion without prejudice.

---

[1] The subject property is also identified on the Suffolk County Tax Map as District 0200 Section 394.00 Block 07.00 Lot 028.000.  (Compl. ¶ 1.)

**BACKGROUND**

**I.    Factual Background**

According to the Complaint, on June 15, 2007, Fernandez mortgaged the premises at 9 Conklin Avenue, Selden, New York 11784 to National City Bank to secure $67,000.  (Compl. ¶ 8.) The mortgage was recorded in the Suffolk County Clerk's Office on July 24, 2007.  (*Id.* ¶ 8, Ex. B.)  Fernandez also executed and delivered a promissory note to National City Bank in the amount of $67,000.  (*Id.* ¶ 9, Ex. C.)  National City Bank's successor, PNC Bank, N.A., assigned the mortgage to Dreambuilder Investments, LLC, on September 3, 2010, and Dreambuilder assigned the mortgage to Wilmington on May 4, 2021.  (*Id.* ¶ 10.) The assignments were recorded in the Suffolk County Clerk's Office on August 23, 2021.  (*Id.* ¶ 10, Ex. D.)  Wilmington currently has physical possession of the note.  (*Id.* ¶ 12.)

Fernandez resides at the subject property.  (*Id.* 4.)  She defaulted on the mortgage by failing to make her June 1, 2016, payment or any subsequent payment.  (*Id.* ¶ 13.)  On February 23, 2022, Wilmington sent Fernandez a default notice, debt validation notice, and pre-foreclosure notice.  (*Id.* ¶ 14, Ex. E.)  Fernandez had not responded to these notices as of the date Wilmington filed its Complaint.  (*Id.* ¶ 17.)

The loan was due for payment on June 1, 2016.  (ECF No. 10-6, Aff. of Amounts Due & Owing to Pl. ("Briseno Aff.")

2

¶ 5.)  As of the date Wilmington filed the instant motion, Fernandez owed $66,335 of the outstanding principal of the loan.  (*Id.*)  Under the terms of the loan, the interest rate at the time of Fernandez's default was, and remains, 9.625%.  (*Id.* ¶ 7.)

## II.   Procedural Background

Wilmington commenced this action by filing its Complaint on October 25, 2022.  The Summons issued on October 26, 2022, (ECF No. 6), and Wilmington on December 12, 2022, filed proof that Fernandez was served with a copy of the Summons, Complaint, Certificate of Merit,[2] and statutory notice by personal delivery at her residence on November 25, 2022, (ECF No. 7, Aff. of Service).  Fernandez thus was required to answer or otherwise respond to the Complaint by December 16, 2022.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  On December 19, 2022, Wilmington filed a request for the Clerk of Court to enter a certificate of default, attaching a declaration from its attorney stating that Fernandez had not answered or otherwise responded to the Complaint.  (ECF No. 8.)  The Clerk of Court entered the Certificate of Default on December 28, 2022.  (ECF No. 9, Certificate of Default.)

---

[2] Under New York law, the plaintiff in certain residential mortgage foreclosure cases must file a certificate of merit.  *See* N.Y. C.P.L.R. § 3012-B; *Windward Bora LLC v. Ingber*, No. 21-cv-3308 (KAM) (ARL), 2022 WL 2467664, at *2-3 (E.D.N.Y. Apr. 28, 2022), *R&R adopted*, 2022 WL 2467664 (E.D.N.Y. June 21, 2022).

On February 21, 2023, Magistrate Judge Tiscione ordered Wilmington to move for a default judgment by March 17, 2023. Wilmington filed the instant motion on March 13, 2023, attaching a declaration of regularity, a memorandum of law, a proposed judgment of foreclosure and sale, the Summons, the Complaint and its exhibits, Wilmington's request for a certificate of default, the Certificate of Default, and an affidavit from the Vice President of Aspen Properties Group, LLC,[3] attesting to the amounts due and owing to Wilmington. (ECF No. 10.) Wilmington also attached an affidavit stating that its motion papers were mailed to Fernandez at her residence by First Class Mail on March 13, 2023. (ECF No. 10-7, Aff. of Service.)

On January 12, 2024, the Court ordered Wilmington to file a letter attaching a copy of its current articles of association so the Court could ascertain Wilmington's citizenship to determine whether the Court has subject-matter jurisdiction over this action. Upon further review of Wilmington's filings, however, the Court has discovered additional defects that cannot be rectified by a supplemental letter.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 governs the two-step

---

[3] Wilmington brings this action not in its own capacity but rather in its capacity as "[o]wner [t]rustee" of the Aspen Holdings Trust. The affidavit states that Aspen Properties Group, LLC, is the administrator for Wilmington in its capacity as "[o]wner [t]rustee" of the Aspen Holdings Trust.

4

process by which a plaintiff obtains a default judgment against a defendant.  First, when the defendant fails to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk of court enters the defendant's default.  Fed. R. Civ. P. 55(a).  Then, the plaintiff may move the court to enter a default judgment against the defendant.  Fed. R. Civ. P. 55(b).  Before entering a default judgment, the court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all required procedural steps in moving for a default judgment, and (3) the plaintiff's allegations establish the defendant's liability as a matter of law.  *Windward Bora LLC v. Ingber*, No. 21-cv-3308 (KAM), 2023 WL 6385815, at *2 (E.D.N.Y. Sept. 29, 2023).  The court also must find a basis for the damages specified in the default judgment.  *Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 22-cv-5942 (NGG), 2023 WL 5703698, at *3 (E.D.N.Y. Sept. 5, 2023).

When evaluating the defendant's liability, the court accepts as true all well-pleaded allegations in the complaint.  *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019).  Still, the court must ensure the allegations provide a basis for liability and relief, and the court has discretion to require further proof of necessary facts.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  If the unchallenged facts establish the defendant's liability, the

5

court determines the amount of damages due. *Newman v. W. Bar & Lounge, Inc.*, No. 20-cv-1141 (KAM), 2021 WL 2401176, at *3 (E.D.N.Y. June 11, 2021). The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment. *Id.*

## DISCUSSION

### I. Jurisdiction

The first defect preventing the Court from granting Wilmington's motion is that Wilmington's filings lack sufficient information to establish that the Court has subject-matter jurisdiction. Although the plaintiff has the burden to establish jurisdiction, a federal court has an independent obligation to determine whether subject-matter jurisdiction exists "even in the absence of a challenge from any party." *Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 46, 48 (E.D.N.Y. 2021) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Courts must exercise heightened vigilance in the default judgment context, where courts lack the benefit of the adversarial process to reveal potential jurisdictional defects.

Here, Wilmington seeks to invoke the Court's subject-matter jurisdiction based on diversity of citizenship. (Compl. ¶ 6.) Its memorandum of law in support of its motion for a default judgment contains no case citations or legal analysis supporting

6

that invocation, so the Court is left to determine based on its own research whether diversity jurisdiction exists. The federal diversity statute gives the federal district courts original subject-matter jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The statute requires "complete diversity," which means that no plaintiff may be a citizen of the same state as any defendant. *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020).

Here, the Complaint lacks enough information for the Court to determine whether the parties are completely diverse. Wilmington itself is a citizen of whichever state its articles of association designate as containing its main office, *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016), but Wilmington has not submitted its articles of association or alleged the state that its articles of association designate as containing its main office. Complicating matters, Wilmington sues not in its *own* capacity but rather "[s]olely" in its capacity as "[o]wner [t]rustee" of the Aspen Holdings Trust, a Delaware statutory trust. (*See* Compl. ¶ 2.) Moreover, Wilmington alleges that it lacks "real and substantial control" over the trust property. (*Id.*) If that allegation is true, Wilmington's citizenship may not matter for diversity purposes.

7

*See U.S. Bank Nat'l Ass'n v. Derosiers*, No. 17-cv-7338 (JMW), 2021 WL 5630899, at *4 (E.D.N.Y. Dec. 1, 2021) (concluding plaintiff trustee was not real party in interest because terms of trust agreement failed to establish trustee had "real and substantial control" over trust property). The Court may not rely on such conclusory jurisdictional allegations in policing its own subject-matter jurisdiction, however. *See Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 186 (E.D.N.Y. 2022). Because Wilmington failed to attach the trust agreement, the Court cannot determine the identity of the real party in interest and thus whether Wilmington's citizenship or Aspen's citizenship matters for diversity purposes. *See U.S. Bank Tr., N.A. v. Dupre*, No. 15-cv-558 (LEK) 2016 WL 5107123, at *4 (N.D.N.Y. Sept. 20, 2016) (dismissing action where plaintiff's redactions to key provisions of trust agreement left court unable to determine plaintiff's citizenship).

If the Court were to review the trust agreement and agree with Wilmington that Wilmington lacks real and substantial control over the trust property, Aspen would become the real party in interest and the Court would have to determine its citizenship. Wilmington's assertion that Aspen is "a citizen of both Missouri and Colorado," (Compl. ¶ 3), is a conclusory statement that the Court may not simply take at face value, *see Kenshoo*, 586 F. Supp. 3d at 186. Wilmington alleges that Aspen

8

is a Delaware statutory trust. (Compl. ¶ 2.) Delaware law defines a "statutory trust" as an "unincorporated association" created by a "governing instrument." Del. Code Ann. tit. 12, § 3801(i). Under the relevant federal standards, an "unincorporated association" takes the citizenship of each of its "members." *Ocean Units LLC v. Ill. Union Ins. Co.*, 528 F. Supp. 3d 99, 101 (E.D.N.Y. 2021). Because Wilmington has not provided the Court with Aspen's "governing instrument," the Court is unable to determine who Aspen's "members" are. Wilmington *implies* without stating outright that Aspen's sole member is its "sole beneficiary," APG Holdings, LLC. (Compl. ¶ 3.) There is case law from this circuit that might support the position that the citizenship of a Delaware statutory trust depends on the trust's beneficiaries. *See, e.g.*, *MSR Tr. v. Nationstar Mortg. LLC*, No. 21-cv-3089 (GBD) (RWL), 2021 WL 4200720, at *10 (S.D.N.Y. Sept. 15, 2021), *R&R adopted*, 2022 WL 392405 (S.D.N.Y. Feb. 9, 2022); *SPV-LS, LLC v. Bergman*, No. 15-cv-6231 (KAM) (CLP), 2019 WL 2257244, at *17 (E.D.N.Y. Jan. 14, 2019), *R&R adopted*, 2019 WL 1552914 (E.D.N.Y. Apr. 10, 2019). Regardless, Wilmington has not provided sufficient information about the trust for the Court to determine whether Aspen might have other "members" aside from its "beneficiaries." If such non-beneficiary "members" exist, their citizenship may affect whether the complete diversity requirement is satisfied.

9

If the Court were to conclude based on a review of Delaware law and Aspen's governing instrument that Aspen's sole "member" is APG, Aspen would take the citizenship of each of APG's members.  *See Ocean Units*, 528 F. Supp. 3d at 101 (explaining that a limited liability company takes the citizenship of each of its members).  Wilmington alleges that APG's members comprise a "citizen of" Missouri and a "citizen of" Colorado.  (Compl. ¶ 3.)  A natural person's citizenship for diversity purposes depends on where the person is "domiciled."  *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 217 (E.D.N.Y. 2011).  "Allegations that a party 'is a citizen' of a particular state are conclusory and don't establish domicile."  *Martinez v. Univ. of San Diego*, No. 20-cv-1946 (LAB), 2020 WL 10965119, at *1 (S.D. Cal. Nov. 3, 2020); *see Kenshoo*, 586 F. Supp. 3d at 184–85.  Domicile requires both bodily presence in a given place and permanent intention to remain there.  *In re Maresca*, 982 F.3d 859, 862 (2d Cir. 2020).  A person can have multiple residences but can have only one domicile.  *Id.*  Allegations caveated with the phrase "upon information and belief," (*see* Compl. ¶ 4), or any other such tentative language are insufficient to establish domicile.

In sum, the lack of information regarding Wilmington's main office, the extent of Wilmington's control over Aspen's assets, Aspen's "members," and the respective domiciles of APG's members

10

leaves the Court unable to determine whether the parties are completely diverse and thus requires the Court to deny Wilmington's motion for a default judgment.

## II. Procedural Requirements

The next defect preventing the Court from granting Wilmington's motion is Wilmington's failure to comply with the Servicemembers Civil Relief Act. That statute requires a plaintiff seeking a default judgment to file an affidavit stating whether the defendant is in the military service. 50 U.S.C. § 3931. The court lacks discretion to excuse the plaintiff's failure to comply with the statute. *Windward Bora, LLC v. Ortiz*, No. 21-cv-4154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *R&R adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). The non-military affidavit must be based on facts adduced from an investigation conducted *after* the defendant defaults. *Id.*

Here, the Court cannot proceed with adjudicating Wilmington's motion for a default judgment because Wilmington has not filed a proper non-military affidavit. The process server's affidavit stating that the process server "asked [Fernandez] whether [she] was active in the military service and received a negative reply," (ECF No. 7, Aff. of Service), does not suffice because the affidavit was written *before* Fernandez's default, *see Ore v. H & C Cleaning Corp.*, No. 22-cv-20 (AMD)

11

(RER), 2022 WL 19520879, at *4 (E.D.N.Y. Dec. 14, 2022), *R&R adopted*, 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023). The affidavits attached to Wilmington's request for a certificate of default, (ECF No. 8 pp. 2–3, Affirmation Supp. Request for Clerk's Certificate of Default, ¶ 4), and to Wilmington's motion for a default judgment, (ECF No. 10-1, Decl. of Regularity Supp. Default J. of Foreclosure & Sale, ¶ 9), also do not suffice because they are caveated by the language "[u]pon information and belief" and do not describe any investigation Wilmington might have conducted to form that belief, *see Uribe v. Nieves*, No. 17-cv-5155 (RRM), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018). Adequate proof might consist of a report from the Department of Defense's website obtained after the defendant's default certifying that the defendant is not in active military service. *See ADI Global Distrib. v. Green*, No. 20-cv-3869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *R&R adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).

Wilmington's failure to file a proper non-military affidavit is a separate, independent reason why the Court must deny Wilmington's motion for a default judgment.

**III. Liability**

The next defect preventing the Court from entering a default judgment is Wilmington's failure to establish its compliance with New York statutory law governing mortgage

12

foreclosure. To prevail in a mortgage foreclosure action under New York law, the plaintiff must satisfy the common law elements and the statutory requirements set forth in Article 13 of the New York Real Property Actions and Proceedings Law. *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y. 2015).

### A. Common Law Elements

The Court finds the common law elements of Wilmington's claim satisfied here. Under New York law, a mortgage is a security for a debt or other obligation. *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018). A plaintiff in a mortgage foreclosure action may prove the defendant's default by showing the existence of an obligation secured by a mortgage and that the defendant defaulted on that obligation. *Id.* The plaintiff establishes a prima facie case for foreclosure by submitting the mortgage, the unpaid note, and evidence of the default. *Id.* The burden then shifts to the defendant to raise a triable issue of fact with respect to the plaintiff's proof or an affirmative defense or counterclaim. *Id.* The plaintiff also must have "standing" to foreclose, which may be established through proof that the plaintiff physically possesses the note. *Id.* at 416.

Here, Wilmington has attached the mortgage and note to its Complaint. (ECF No. 1-1 pp. 3-19.) Wilmington also has submitted an affidavit from its administrator's Vice President,

13

stating based on his personal knowledge and review of its business records that the loan is due for payment as of June 1, 2016, and that the outstanding unpaid principal balance is $66,335.  (Briseno Aff. ¶¶ 1, 3, 5.)  Thus, Wilmington has established a prima facie case for foreclosure, which has gone unrebutted because Fernandez has not appeared in this action.  *See Gustavia*, 321 F. Supp. 3d at 415.  Additionally, Wilmington has established its standing to seek foreclosure by attaching to its Complaint a copy of the note indorsed "in blank" (*i.e.*, payable to its holder) and the chain of assignments.  (*See* ECF No. 1-1 pp. 13–31); *E. Savings Bank, FSB v. Thompson*, 631 F. App'x 13, 16 (2d Cir. 2015).

    **B.    Statutory Requirements**

The Court finds that Wilmington has mostly but not entirely complied with the requirements set forth in Article 13 of the New York Real Property Actions and Proceedings Law.  Though these requirements are sometimes described as "procedural," they are "substantive in nature," *W. Coast Serv., Inc. v. Giammichele*, No. 19-cv-1193 (GTS), 2022 WL 391424, at *5 (N.D.N.Y. Feb. 9, 2022), and thus must be followed in federal court as well as state court, *see Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) ("In a diversity of citizenship case, state law . . . applies to substantive issues, and federal law applies to procedural issues.") (citing

14

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

As a threshold matter, Wilmington failed to comply with the requirement in Section 1302(1)(b) that the plaintiff affirmatively allege that it has "complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules or regulations promulgated thereunder." *See* N.Y. Real Prop. Acts. Law § 1302(1)(b). Wilmington's Complaint states only that Wilmington "has complied with all the provisions of Section 595a . . . of the Banking Law," inexplicably omitting any mention of the "rules and regulations promulgated thereunder." (*See* Compl. ¶ 15.)

Article 13 also generally requires the plaintiff in a residential mortgage foreclosure action to (1) serve a notice on the defendant along with the summons and complaint, N.Y. Real Prop. Acts. Law § 1303, (2) serve an additional notice at least ninety days before commencing the foreclosure action, N.Y. Real Prop. Acts. Law § 1304, (3) file certain information with the Superintendent of the New York State Department of Financial Services within three business days of mailing the notice required by Section 1304, N.Y. Real Prop. Acts. Law § 1306, (4) include special information in the summons, N.Y. Real Prop. Acts. Law § 1320, and (5) file a notice of pendency of the action along with a copy of the complaint in the clerk's office of the county where the subject property is located, N.Y. Real

15

Prop. Acts. Law § 1331; N.Y. C.P.L.R. § 6511(a) ("Unless it has already been filed in that county, the complaint shall be filed with the notice of pendency.").

Wilmington has provided evidence of its compliance with the first four of these requirements but not the fifth.  First, Wilmington's process server stated that he served the notice required by Section 1303 with the Summons and Complaint, and the notice attached to the affidavit complies with the formatting requirements in Section 1303(2) and contains the content required by Section 1303(3).  (*See* ECF No. 7, Aff. of Service.)  Second, Wilmington has attached to its Complaint the notice required by Section 1304, which contains the content required by Sections 1304(1) and 1304(2), and an affidavit stating that the Section 1304 notice was mailed to Fernandez at her last known address by first-class mail in a separate envelope on February 23, 2022 (*i.e.*, more than ninety days before Wilmington filed this action), as required by Section 1304(2).  (*See* ECF No. 1-1 pp. 43–47.)  Third, Wilmington has attached a Proof of Filing Statement from the New York State Department of Financial Services stating that Wilmington filed the information required by Section 1306 on February 23, 2022, the same day Wilmington mailed the Section 1304 notice.  (*See* ECF No. 1-1 pp. 48.)  Fourth, Wilmington's process server's affidavit states that the process server delivered the special summons required by

16

Section 1320 to Fernandez, and the special summons contains the content required by Section 1320.  (ECF No. 7, Aff. of Service; ECF No. 1-2, N.Y. RPAPL § 1320 Notice.)

Wilmington failed to establish its compliance with respect to the notice of pendency requirement in Section 1331, however. Wilmington includes a declaration *stating* that it has filed a notice of pendency, (ECF No. 10-1 ¶ 4), but it did not attach the notice, *see 5316 Church Ave. LLC v. Yhun*, No. 14-cv-7376 (FB), 2017 WL 4233022, at *1 (E.D.N.Y. Sept. 22, 2017) (noting court had to "request[] supplemental briefing" because plaintiff's original papers "did not provide any evidence that the notice of pendency required by [Section 1331] had been filed").  The Court will not enter a judgment stating that the notice of pendency was filed, (*see* ECF No. 10-3, Proposed J. Foreclosure & Sale, at 1), before seeing proof that the filing actually occurred.  Moreover, Wilmington's statement that it filed the notice of pendency does not mention whether Wilmington included a copy of the Complaint with that filing.  Failure to file the complaint with the notice of pendency renders the notice of pendency defective.  *Nationstar Mortg. LLC v. Nedza*, 315 F. Supp. 3d 707, 710-11 (W.D.N.Y. 2018) (denying motion for default judgment where "nothing in the record support[ed] [plaintiff's] counsel's assertion that [plaintiff] . . . fil[ed] the complaint with the notice of pendency").  Wilmington's

17

failure to submit proof that it has filed a notice of pendency and a copy of its amended complaint with the Suffolk County Clerk is a separate, independent reason why the Court must deny Wilmington's motion for a default judgment.

## IV. Relief

Because of the procedural and substantive defects described above, the Court cannot grant any relief at this juncture; however, the Court notes that Wilmington's proposed judgment designates Kevin Snover as a referee to effectuate the sale of the property despite Wilmington not having provided a description of Snover's qualifications. (*See* ECF No. 10-3 at 2.) Common practice in this district is to provide the Court three proposed referees and include brief descriptions of their qualifications. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Christian*, No. 19-cv-427 (CBA) (RML), 2020 WL 3918566, at *6 & n.2 (E.D.N.Y. Feb. 25, 2020), *R&R adopted*, 2020 WL 3893015 (E.D.N.Y. July 10, 2020).

Additionally, with respect to damages, even if the Court were to find liability, there would be insufficient information before the Court to determine damages to a reasonable certainty because Wilmington's only proof of damages is the mortgage, the note, and Wilmington's own affidavit stating the amount of the outstanding principal. *See Happy Homes, LLC v. Jenerette-Snead*, No. 15-cv-1788 (MKB), 2016 WL 6599826, at *5 (E.D.N.Y. Nov. 7,

18

2016). Adequate poof might include a payment ledger or other documentary evidence of the outstanding principal.

Finally, Wilmington has not addressed the extent to which Wilmington's damages may be limited by the applicable statute of limitations. In New York, an action to foreclose on a mortgage is subject to a six-year statute of limitations. *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021). For a mortgage payable in installments, a separate claim accrues for each unpaid installment and the statute of limitations begins to run on the date each installment becomes due. *Id.* If the mortgage debt is accelerated, however, the entire amount becomes due on the date of the acceleration and the statute of limitations begins to run on the entire debt. *Id.* Wilmington's complaint alleges that Fernandez "fail[ed] to pay the June 1, 2016, payment and all subsequent payments." (Compl. ¶ 13.) Wilmington did not bring this action until October 25, 2022, more than six years after the first alleged missed payment. Wilmington's supporting memorandum leaves it unclear whether claims for installment payments due before October 25, 2016, are barred by the statute of limitations, whether Wilmington ever accelerated the debt, and if so, the effect of the acceleration on the statute of limitations.

## **CONCLUSION**

For the reasons stated above, the Court denies Wilmington's

motion for a default judgment.

Wilmington is granted leave to file an amended complaint curing the jurisdictional defects and other defects described above by March 20, 2024. Wilmington is advised that this Memorandum and Order should not be considered "an exhaustive recitation of the deficiencies" in Wilmington's filings. *See Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-cv-5474 (ENV), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015). Before filing an amended complaint, Wilmington should re-examine all jurisdictional, procedural, and substantive rules applicable to this action and comply strictly with each of them.

Wilmington shall serve any amended complaint on Fernandez in accordance with Federal Rule of Civil Procedure 4. Should Fernandez fail to timely answer or otherwise respond to the amended complaint, Wilmington must request and obtain a new certificate of default against Fernandez in accordance with Local Rule 55.1. Wilmington also must comply with Local Rule 55.2 and 50 U.S.C. § 3931 in moving for a default judgment on the amended complaint.

**SO ORDERED.**

Dated:   January 22, 2024
        Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York